■ ANDRE WATTS, Appellant, v COLUMBIA ARTISTS MANAGEMENT, INC., Respondent.—Casey, J. Appeal (transferred to this Court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Weiner, J.), entered May 17, 1991 in Rockland County, upon a decision of the court in favor of defendant.

Plaintiff, a concert pianist, commenced this declaratory judgment action seeking, *inter alia,* a determination of his liability to defendant, which provides managerial services to performing artists, for services performed by defendant prior to September 1, 1988. Defendant began to provide its services to plaintiff in 1983 when it entered into a contract with Andre Watts Performances, Inc. (hereinafter the Corporation), which provided that defendant would act as plaintiff's exclusive

agent and that defendant would be compensated for its services by receiving, *inter alia,* 15% of plaintiff's earnings for American concerts, but defendant would be entitled to no fee if plaintiff was not paid for an engagement. Although the Corporation dissolved in August 1985 and the term of the contract expired September 1, 1986, defendant continued to provide services to plaintiff and plaintiff continued to pay for those services in the manner provided for in the expired contract between defendant and the Corporation. Plaintiff notified defendant in writing on August 9, 1988 that he wished to terminate his relationship with defendant effective September 1, 1988.

When the parties' relationship was terminated, defendant had scheduled a total of 82 engagements for plaintiff for the next two concert seasons. Contracts had been executed as of September 1, 1988 for 48 of the 82 scheduled engagements, and plaintiff performed and was paid for 46 of those 48 engagements. Of the remaining 34 scheduled engagements, for which no contract had been executed as of September 1, 1988, plaintiff performed 33 of them and was paid for 32 of the performances. Defendant claims entitlement to its 15% commission for all 78 of the engagements performed by plaintiff for which he was paid. Plaintiff contends that defendant is entitled to no commission on the 32 engagements for which no contract had been executed prior to September 1, 1988. As to the remaining 46 engagements, plaintiff contends that defendant is entitled only to one half of its usual 15% commission because additional managerial services, including travel arrangements, rehearsal schedules, piano delivery and tuning, receptions, master classes and other details, were required after September 1, 1988. According to plaintiff, the additional services were performed by another manager retained by plaintiff after September 1, 1988.

At the nonjury trial, plaintiff, an officer of defendant and other witnesses testified. Much of the testimony concerned the managerial services provided to plaintiff in particular and the industry practice in general. Supreme Court found that a contract implied in fact existed between the parties with the same terms and conditions as the expired written contract between the Corporation and defendant, and that defendant was entitled to full commissions for all 78 engagements at issue. Plaintiff appeals from the judgment entered on Supreme Court's decision.

According to plaintiff, Supreme Court erred in "piercing the corporate veil" to bind plaintiff to the terms and conditions of

a contract to which he was not a party. Although Supreme Court's decision is not entirely clear on the issue, we read it as finding a separate and distinct contractual relationship between plaintiff and defendant, implied in fact, which arose out of the parties' continued relationship after the Corporation was dissolved and the written contract expired. A contract implied in fact rests upon the conduct of the parties and not their verbal or written words *(Parsa v State of New York,* 64 NY2d 143, 148). Thus, the theories of express contract and of contract implied in fact are mutually exclusive *(see, Davis v Caldwell,* 54 NY2d 176). Whether an implied-in-fact contract was formed and, if so, the extent of its terms involve factual issues regarding the intent of the parties and the surrounding circumstances *(see, Jemzura v Jemzura,* 36 NY2d 496, 503-504). We are of the view that the parties' conduct after the expiration of the written contract, including defendant's continued rendition of services, plaintiff's acceptance of those services and plaintiff's payment of commissions in accordance with the terms of the written contract, clearly establish a contract implied in fact with substantially the same terms and conditions as embodied in the expired written contract between defendant and the Corporation *(see, New York Tel. Co. v Jamestown Tel. Corp.,* 282 NY 365, 371; *Recon Car Corp. v Chrysler Corp.,* 130 AD2d 725, 729, *lv denied* 70 NY2d 612). The mere fact that plaintiff was not a party to the written contract does not preclude the formation of a new contract, implied in fact, between plaintiff and defendant, with terms and conditions similar to those contained in the written contract.

The remaining question is whether defendant was entitled to full commissions on all 78 engagements booked by defendant prior to September 1, 1988 for which plaintiff was ultimately paid, as found by Supreme Court, or whether defendant was limited to the recovery of one half of its regular commission on only those 46 engagements for which a contract had been executed prior to September 1, 1988, as plaintiff contends. The evidence establishes that an engagement was booked by defendant when it arranged the date, time and fee for a performance, informed plaintiff of the engagement and was informed by plaintiff that he accepted the engagement. Plaintiff offered evidence that additional management services prior to the execution of a contract are necessary to assure a meeting of the minds between the presenter and plaintiff on the essential terms of the engagement. Defendant offered evidence that the essential terms of

date, time and fee were arranged with the booking and that the execution of a contract was largely a formality, involving ministerial details. That plaintiff actually performed 33 of the 34 engagements booked by defendant for which no contract was executed prior to September 1, 1988 tends to support defendant's position. In any event, the terms of the written contract, which were continued by the parties in their new contract implied in fact formed after the expiration of the written contract, contains no reference to the execution of a formal contract with the presenter. Rather, defendant's commission is dependent upon the scheduling of the engagement during the term of the contract and plaintiff's receipt of payment for the engagement.* We conclude, therefore, that Supreme Court correctly found plaintiff liable for commissions on all 78 bookings, regardless of whether a contract had been executed prior to September 1, 1988.

We also agree with Supreme Court that defendant is entitled to the full commission on each of the engagements. As previously noted, defendant earned its commission when the engagement was booked and plaintiff received payment for his performance, and it is undisputed that defendant remained ready, willing and able to provide the additional management services which plaintiff contends were necessary before he actually performed the engagements booked by defendant. That plaintiff elected to have those services performed by another manager does not, in the facts and circumstances revealed by the evidence in the record, preclude defendant from receiving the full amount of its commissions. Supreme Court's judgment should, therefore, be affirmed.

Yesawich Jr., J. P., Levine, Crew III and Harvey, JJ., concur. Ordered that the judgment is affirmed, with costs.

---

* Plaintiff makes no claim that the engagement must actually have been performed prior to the September 1, 1988 termination of the parties' contract.