■ In the Matter of HANS BOICE. JUSTICE RESOURCE INSTITUTE, INC., Respondent; DAVID BOICE et al., as Conservators/Guardians of the Property of HANS BOICE, Appellants. [640 NYS2d 681] —White, J. Appeal (transferred to this Court by order of the Appellate Division, Second Department) from a judgment of the Supreme Court (Bernhard, J.), entered October 21, 1994 in Dutchess County, which partially denied petitioner's application, in a proceeding pursuant to Mental Hygiene Law § 81.35, to, *inter alia*, have respondents removed as conservators/guardians of the property of Hans Boice.

Petitioner, a Massachusetts not-for-profit corporation, operates Berkshire Meadows (hereinafter Berkshire), which is a residential school for severely handicapped adolescents and

adults. Respondents are the parents of Hans Boice (hereinafter Hans), born in 1971, and have been coconservators/guardians for Hans since February 1991. Hans, as a result of a childhood accident that left him with severe, permanent physical and mental disabilities, with the approval of his parents, was placed at Berkshire in 1989 by the Red Hook School District, where respondents resided. Berkshire's staff of over 100 provides extensive physical therapy, speech therapy and round-the-clock nursing care, along with independent living and communications programs and varied educational programs for the approximately 50 residents who are primarily nonverbal and in diapers. The facility charges a fixed per diem rate for all patients, approved by both Massachusetts and New York, regardless of whether care is funded by Medicaid or other public or private sources.

Hans' care at Berkshire was fully paid by the State Education Department until July 1, 1992, at which time his eligibility ceased since he had become 21 years of age. Attempts to obtain additional public funding were not successful since Hans had private resources which had not been exhausted, and Hans remained at Berkshire until July 1994.[1] As of July 1992, the fixed per diem rate for a patient was $203.20 and, on July 1, 1993, this was increased to $223.72 per day, and it is conceded that no payments were made to petitioner for care given to Hans subsequent to July 1, 1992.

According to petitioner, respondent Donna Boice had been informed in April 1992 that public funding for Hans' care would terminate on June 27 of that year and, on March 31, 1993 following a telephone conversation in which Donna Boice acknowledged responsibility for Hans' care and agreed to forward $25,000 to petitioners as partial payment, a bill in the amount of $55,695.98 for 274 days of care at $203.27 per day was submitted to Donna Boice, but no payments for Hans' care were made by respondents. In July 1993 respondents sought judicial approval to withdraw funds to pay the outstanding bill for the care of Hans and, although this application was granted and the release of approximately $75,000 was authorized for payment to Berkshire for services rendered to Hans, no money was forthcoming to either Berkshire or petitioner.

Thereafter, petitioner commenced an action against respondents in Massachusetts in October 1993 to recover the moneys owed for Hans' care at the facility. Also in October 1993,

---

1. Respondents were appointed coconservators of Hans' property in 1991, at which time said property consisted of a trust containing approximately $340,000.

respondents applied for release of funds to purchase and improve a house to enable Hans to return to their care. This application was granted and respondents purchased a house in January 1994 and proceeded to make improvements thereon. Subsequently, in July 1994 Hans left the facility to respondents' care, at which time there was an amount of $160,325.75 due on his account.

In April 1994 petitioner commenced the instant proceeding pursuant to Mental Hygiene Law § 81.35 seeking to remove respondents as coconservators/guardians and recover the outstanding moneys due for Hans' care.[2] After a hearing Supreme Court determined that petitioner had proved the existence and breach of an implied contract and awarded judgment to petitioner in the amount of $160,325.75, while denying petitioner's application to remove respondents as coconservators/guardians.

Although there was no written contract between the parties, it is well settled that a contract may be implied in fact where inferences may be drawn from the facts and circumstances of the case and the intention of the parties as indicated by their conduct (see, Jemzura v Jemzura, 36 NY2d 496, 503-504; Watts v Columbia Artists Mgt., 188 AD2d 799, 801). Thus, an agreement by conduct does not differ from an express agreement except in the manner by which its existence is established (see, Parsa v State of New York, 64 NY2d 143, 148; Matter of Ahern v South Buffalo Ry. Co., 303 NY 545, 561).

Here, there were factual issues to be determined by Supreme Court and there was ample evidence to support its finding that respondents, particularly Donna Boice, as a result of their familiarity with the Berkshire school, its services and facilities, knew of the type and nature of services being rendered to Hans and impliedly accepted these services on his behalf, thereby becoming obligated to pay for his care at the facility (see, Seaview Assn. v Williams, 69 NY2d 987, 989). The record discloses that an official of Berkshire met with Donna Boice in April 1992 and advised her that public funding for Hans' care would expire at the time of his 21st birthday in June 1992; although Donna Boice disputes this, Supreme Court found that she was not a credible witness, a finding to which we accord great deference (see, McGuirk v Ferran, 222 AD2d 943; Town of Ulster v Massa, 144 AD2d 726, 727-728, lv denied 75 NY2d 707). In addition, the proof shows that respondents accepted the continued rendition of services after June 1992 and, in 1993, applied for

2. The Massachusetts action was withdrawn in May 1994.

and received permission to withdraw approximately $75,000 to pay the then-outstanding bill due petitioners. Therefore, we find, based upon the facts and circumstances presented and the inferences that can be reasonably drawn from the conduct of the parties, that Supreme Court properly found that an implied contract existed and that respondents were obligated to pay the amount due for Hans' care through the termination of his stay at Berkshire in July 1994.

We find that the contentions raised by respondents on appeal are either without merit or unpreserved for our review.

Cardona, P. J., Crew III, Yesawich Jr. and Spain, JJ., concur. Ordered that the judgment is affirmed, without costs.