■ ROCKY POINT PROPERTIES, INC., Appellant, v SEAR-BROWN GROUP, INC., et al., Respondents, et al., Defendant. [744 NYS2d 269] —Appeal from so much of an order of Supreme Court, Oneida County (Shaheen, J.), entered April 11, 2001, that, inter alia, granted in part the motion of defendants The Sear-Brown Group, Inc. and Sear-Brown Associates, P.C. for partial summary judgment.

It is hereby ordered that the order so appealed from be and the same hereby is unanimously modified on the law by denying the motion of defendants The Sear-Brown Group, Inc. and Sear-Brown Associates, P.C. in its entirety and as modified the order is affirmed without costs.

Memorandum: Plaintiff commenced this action alleging, inter alia, that defendants The Sear-Brown Group, Inc. and Sear-Brown Associates, P.C. (collectively, Sear-Brown) were negligent in designing a townhouse project (Project). In 1986 Thomas J. McConnell, Raymond Schaller, and Dr. Donald D. Smith formed a corporation named Torado, Limited (Torado) and purchased property with the intention of building townhouses there. In August 1987 Torado entered into an agreement (Agreement) with Sear-Brown Associates, P.C. pursuant to which Sear-Brown Associates, P.C. was to provide architectural and engineering services for the Project. Donald Smith signed the Agreement on behalf of Torado. Section 15.4 of the Agreement contained a provision that limited the liability of Sear-Brown "due to [its] negligent acts, errors or omissions." When Torado discovered that additional capital for the Project was required, Robert Irish and Joseph E. Smith, Jr. joined with the three shareholders of Torado and formed plaintiff corporation in September 1987. All five shareholders had an equal share in plaintiff corporation, and Donald Smith was its treasurer. Torado assigned all of its interest in the subject property to plaintiff. Sear-Brown was aware that plaintiff had taken over the Project but did not enter into a separate written agreement with plaintiff. Sear-Brown continued to provide services on the Project, billed plaintiff for its services, and was paid by plaintiff.

Sear-Brown moved for partial summary judgment seeking a

determination that the Agreement was applicable to and enforceable against plaintiff, including the limitation of liability provision contained therein. Plaintiff cross-moved to dismiss the first affirmative defense of Sear-Brown, which is based on the limitation of liability provision, or, in the alternative, plaintiff sought to limit the applicability of that affirmative defense to the first cause of action, for architectural negligence. Supreme Court granted Sear-Brown's motion in part, determining that the Agreement is applicable to and enforceable against plaintiff, including the limitation of liability provision, "except that the provision shall only limit liability for alleged architectural negligence, and not alleged engineering negligence." The court granted that part of plaintiff's cross motion seeking a determination that the limitation of liability provision applies only to claims for architectural negligence. Plaintiff appeals in limited part from the order, contending that the court should have denied Sear-Brown's motion in its entirety and should have granted that part of plaintiff's cross motion seeking dismissal of Sear-Brown's first affirmative defense in its entirety.

We conclude that the court properly denied plaintiff's cross motion in part but should have denied Sear-Brown's motion in its entirety because there are triable issues of fact concerning the enforceability of the Agreement against plaintiff. We agree with plaintiff that its conduct did not establish as a matter of law that it intended to be bound by the Agreement. "A contract implied in fact rests upon the conduct of the parties and not their verbal or written words" (*Watts v Columbia Artists Mgt.,* 188 AD2d 799, 801). "Whether an implied-in-fact contract was formed and, if so, the extent of its terms, involves factual issues regarding the intent of the parties and the surrounding circumstances" (*Arell's Fine Jewelers v Honeywell, Inc.,* 147 AD2d 922, 923; *see Matter of Boice,* 226 AD2d 908, 910; *Watts,* 188 AD2d at 801). It is undisputed that, after plaintiff was formed and took over the Project, Sear-Brown continued to provide its architectural and engineering services. Even assuming, arguendo, that it may be inferred therefrom that an implied-in-fact contract existed between Sear-Brown and plaintiff for Sear-Brown to provide its engineering and architectural services (*see generally Berlinger v Lisi,* 288 AD2d 523, 524-525), we nevertheless conclude that there is a triable issue of fact with respect to the terms of any such implied-in-fact contract (*see Capital Med. Sys. v Fuji Med. Sys., U.S.A.,* 239 AD2d 743, 745). Plaintiff submitted evidence establishing that, although Sear-Brown continued to provide services on the Project, Robert Irish was not aware of the Agreement between Sear-Brown Associates, P.C. and Torado. In addition, plaintiff

submitted evidence establishing that Sear-Brown provided services on the Project that went beyond those set forth in the Agreement.

Contrary to Sear-Brown's contention, there is a triable issue of fact whether plaintiff ratified the Agreement. "Ratification is the express or implied adoption of the acts of another by one for whom the other assumes to be acting, but without authority[,] * * * [and it] relates back and supplies original authority to execute [an agreement]" (*Holm v C.M.P. Sheet Metal,* 89 AD2d 229, 232). Ratification requires "full knowledge of the material facts relating to the transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts or language" (*id.* at 233; *see Matter of New York State Med. Transporters Assn. v Perales,* 77 NY2d 126, 131; *Robbins v Tucker Anthony Inc.,* 233 AD2d 854, 855). Here, Sear-Brown failed to meet its burden of establishing as a matter of law that plaintiff had the requisite knowledge of the material facts to ratify the Agreement (*see generally Rose Ocko Found. v Lebovits,* 259 AD2d 685, 688, *appeal dismissed and lv denied* 93 NY2d 997). Irish testified at his deposition that he had no knowledge of the Agreement and that, if he had, he would not have agreed to be bound by it. In addition, the Agreement was signed by Donald Smith at a time when plaintiff corporation had not yet been formed. Sear-Brown's reliance on a letter signed by Donald Smith in May 1989 is misplaced; there is no evidence that the other shareholders of plaintiff corporation had knowledge of that letter, and in any event there is an issue of fact concerning the effect, if any, of that letter on the enforceability of the Agreement. We agree with plaintiff that Sear-Brown failed to establish that plaintiff was bound by the acts of Donald Smith as a matter of law. There is no showing of any conduct by plaintiff that would provide Donald Smith with apparent authority to act on its behalf (*see Chelsea Natl. Bank v Lincoln Plaza Towers Assoc.,* 61 NY2d 817, 819).

Finally, we reject the contention of Sear-Brown that plaintiff is equitably estopped from denying the validity of the Agreement based on plaintiff's course of conduct since taking over the Project. To establish the applicability of the doctrine of equitable estoppel, Sear-Brown had to establish that it lacked knowledge of the true facts, it relied upon the conduct of plaintiff, and it changed its position to its prejudice (*see Airco Alloys Div. v Niagara Mohawk Power Corp.,* 76 AD2d 68, 81-82). The President of Sear-Brown admitted that he knew that Torado had taken on additional "partners" and was changing

its name, and thus Sear-Brown failed to establish the lack of knowledge requirement (*see Townley v Emerson Elec. Co.*, 269 AD2d 753, 754).

We modify the order, therefore, by denying Sear-Brown's motion in its entirety. Present—Pigott, Jr., P.J., Hayes, Kehoe, Gorski and Lawton, JJ.