■ ANESTHESIA GROUP OF ALBANY, P.C., Appellant, v STATE OF NEW YORK, Respondent. [766 NYS2d 448] —Cardona, P.J. Appeal from a judgment of the Court of Claims (Collins, J.), entered June 28, 2002, which granted defendant's motion for summary judgment dismissing the claim.

In 1996, the Department of Correctional Services (hereinafter DOCS) awarded a health care services contract to United Correctional Managed Care, Inc., a private managed health care company, pursuant to which United would, as an independent contractor, obtain, manage and subcontract for the services of certain specialty physician services, including anesthesiology, for inmates from various correctional facilities. In 1998, the contract was renewed, assigned and assumed by Correctional Medical Services, Inc. (hereinafter CMS), which also claimed to be an independent contractor.

Following the execution of the United contract, claimant, a professional corporation providing anesthesia services to outpatient surgical facilities, rendered care to various DOCS inmates even though claimant did not have a specific contract with either United or CMS for the rate to be reimbursed for those services. From 1996 to 1998, claimant billed United for anesthesia services and those claims were paid at the reduced Medicaid rate. In April 1998, after United stopped paying for billed services, claimant discovered that CMS had taken over the contract. CMS and claimant discussed payment for past and ongoing services. In October 1998, claimant wrote to DOCS requesting payment for services rendered at its usual and customary rate. DOCS apparently did not respond to the letter and claimant continued to provide services to DOCS inmates and submitted bills to CMS. Eventually, all of claimant's claims up to March 30, 1999 were settled. However, claimant thereafter brought this claim contending, inter alia, that it had a contract implied in fact with DOCS to provide services to its inmates and that said contract was breached by DOCS by failing to pay for services rendered from March 31, 1999 through December 19, 2000 at claimant's usual and customary rate.* The Court of Claims granted defendant's motion for summary judgment dismissing the complaint, prompting this appeal.

---

* We note that although claimant alternatively alleged entitlement to payment based upon quantum meruit, it has raised no argument in its brief on

In our view, the Court of Claims properly granted summary judgment on the basis that claimant raised no questions of fact as to the existence of an implied-in-fact contract between it and DOCS. "A contract implied in fact may result as an inference from the facts and circumstances of the case * * * and is derived from the 'presumed' intention of the parties [to enter into a contract] as indicated by their conduct" (*Jemzura v Jemzura,* 36 NY2d 496, 503-504 [1975] [citations omitted]; *see Matter of Estate of Argersinger,* 168 AD2d 757, 758 [1990]). Here, DOCS presented evidence of its contract with United and, subsequently, CMS, which demonstrated that United and CMS acted as independent contractors providing specified medical care and managing the delivery of hospital services to DOCS's inmate population. Additionally, DOCS submitted evidence of correspondence between claimant and CMS, including an April 1998 letter advising claimant that CMS acquired United's correctional health care services contract with DOCS. DOCS also presented proof that claimant dealt directly with CMS by submitting claims, accepting payments and refuting the payment amounts. Furthermore, when claimant did attempt to contact DOCS, it was directed to submit all bills to United or CMS for payment. Simply, there is no evidence in the record supporting an inference that DOCS, through its conduct, exhibited an intention to enter into a separate contract with claimant.

We are also unpersuaded by claimant's argument that summary judgment should not have been granted because, despite the fact that the contract between CMS and DOCS labeled CMS as an independent contractor, CMS was purportedly acting as DOCS's agent and, therefore, DOCS is liable for the actions of its agent. To support that argument, claimant relies upon Restatement (Second) of Agency § 144, which provides: "A disclosed or partially disclosed principal is subject to liability upon *contracts* made by an agent acting within his authority if made in proper form and with the understanding that the principal is a party" (emphasis added). This argument is unavailing because claimant has consistently maintained that it never had a contractual relationship with CMS or United.

Next, we note that, although claimant did not state a cause of action for money had and received in its verified claim, the Court of Claims, nevertheless, considered that issue and found it without merit. We agree. A cause of action for money had

that issue and, therefore, we deem it abandoned (*see Selkirk v State of New York,* 249 AD2d 818 [1998]).

and received is based upon unjust enrichment and is " 'an obligation which the law creates *in the absence of agreement* when one party possesses money that in equity and good conscience [the party] ought not to retain and that belongs to another' " (*Hamlin Beach Camping, Catering & Concessions Corp. v State of New York,* 303 AD2d 849, 852 [2003] [emphasis added], quoting *Parsa v State of New York,* 64 NY2d 143, 148 [1984]). Here, claimant failed to allege that DOCS "received or is holding sums of money to which it is entitled" (*Hamlin Beach Camping, Catering & Concessions Corp. v State of New York, supra* at 853) and, therefore, such a cause of action cannot be sustained.

Finally, given our conclusions as to the above issues, it is unnecessary to consider the Court of Claims' alternative holding that, even if claimant could establish an implied contract, any recovery therefrom would be void pursuant to State Finance Law § 112.

Crew III, Mugglin, Rose and Kane, JJ., concur. Ordered that the judgment is affirmed, without costs.